**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TILE, INC.,**

                                    **Plaintiff,**

            **v.**                                      **1:20-CV-428**
                                                        **(FJS/DJS)**
**CELLNTELL DISTRIBUION INC. and**
**RELIANCE DISTRIBTUION INC.,**

                                    **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**K & L GATES LLP**                       **MORGAN T. NICKERSON, ESQ.**
State Street Financial Center             **NICOLE M. KOZIN, ESQ.**
One Lincoln Street
Boston, Massachusetts 02111
Attorneys for Plaintiff

**CRISCIONE RAVALA, LLP**                 **GALEN J. CRISCIONE, ESQ.**
90 Park Avenue, Suite 1700
New York, New York 10016
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Pending before the Court is Defendants' motion for an Order pursuant to Rules 55(c) and

60 of the Federal Rules of Civil Procedure vacating the Default Judgment entered against them

on September 14, 2020, and permitting them to file a responsive pleading to the amended

complaint.  *See* Dkt. No. 24.

## II. PROCEDURAL HISTORY

On May 11, 2020, Plaintiff filed a Request for Default, *see* Dkt. No. 12, which the Clerk of the Court entered the next day, *see* Dkt. No. 13. Having obtained entry of default, Plaintiff moved for entry of a default judgment on May 29, 2020. *See* Dkt. No. 25. Plaintiff coordinated with process servers to serve the Notice of Motion for Entry of Default upon Defendant CellnTell at its offices in Mississauga, Ontario, and upon Defendant Reliance via the New York Secretary of State. *See* Dkt. No. 29-2, Affidavit of Morgan Nickerson, dated March 24, 2021, ("March 2021 Affidavit") at ¶ 12 & Exhibit F attached thereto.

The Court granted Plaintiff's motion for default judgment and entered judgment in favor of Plaintiff on September 14, 2020. *See* Dkt. Nos. 18-19. Thereafter, Plaintiff learned that Defendant CellnTell had $256,330.32 in its Amazon.com account and that Defendant Reliance had $118,943.78 in its Amazon.com account. *See* Dkt. No. 22-2, Declaration of Morgan Nickerson, dated November 23, 2020 ("November 2020 Declaration") at ¶ 8. Therefore, on November 23, 2020, Plaintiff moved to enforce the judgment against Defendants. *See* Dkt. No. 22. Plaintiff coordinated service upon Defendants of the Motion Scheduling Notice as to Plaintiff's motion to enforce judgment by serving Defendant CellnTell via FedEx at its Ontario address and received confirmation of receipt. *See* March 2021 Affidavit at ¶ 17 & Exhibit G attached thereto. As New York turnover law required, Plaintiff served the Notice upon Defendant Reliance via certified mail at Defendant Reliance's registered address listed on the New York State Secretary of State website and its invoices with customers, the same address it previously served its pre-litigation demand letter and received confirmation of delivery: Mohammad Awais, 99 Washington Avenue, Suite 1008, Albany, NY 12260. *See* March 2021 Affidavit at ¶ 18 & Exhibit H attached thereto. However, the service package delivered to

Defendant Reliance's registered address was returned as "Attempted Not Known." *See id.*
Thereafter, on February 8, 2021, the Court granted Plaintiff's motion to enforce judgment,
ordering Amazon.com to pay Plaintiff the funds in its possession to satisfy the judgment against
Defendants. *See* Dkt. No. 23.

On March 3, 2021, nearly one month after the Court granted Plaintiff's motion to enforce
judgment, Defendants appeared in this action by filing the pending motion. *See* Dkt. No. 24.


### III. DISCUSSION

#### A.      Service on Defendant Reliance

"Plaintiff has 'the burden of proving proper service.'" *AngioDynamics, Inc. v. Clarion
Med. Techs.*, No. 18-30038-MGM, 2019 WL 10787926, *11 (D. Mass. Sept. 25, 2019) (quoting
*Rivera-Lopez v. Municipality of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992)).  It is well-
established that "[s]ervice of process on a corporate defendant by serving the summons and
complaint on the Secretary of State pursuant to Business Corporation Law § 306 is valid
service[.]" *Shimel v. 5 S. Fulton Ave. Corp.*, 11 A.D.3d 527, ___, 783 N.Y.S.2d 54, 55 (2d Dep't
2004) (citing *Green Point Sav. Bank v. 794 Utica Ave. Realty Corp.*, 242 A.D.2d 602, 664
N.Y.S.2d 744; *Harbert Offset Corp. v. Bowery Sav. Bank*, 174 A.D.2d 650, 571 N.Y.S.2d 507).
Furthermore, "[s]ervice upon a corporation 'shall be complete when the secretary of state is so
served.'" *Cascione v. Acme Equip. Corp.*, 23 A.D.2d 49, 50, 258 N.Y.S.2d 234, 236 (1st Dep't
1965) (quoting Business Corporation Law, § 306).  This is true "irrespective of whether the
process subsequently reaches the corporate defendant." *Associated Imports, Inc. v. Leon Amiel
Publisher, Inc.*, 168 A.D.2d 354, 354, 562 N.Y.S.2d 678, 679 (1st Dep't 1990) (citing *Micarelli
v. Regal Apparel*, 52 A.D.2d 524); *see also Perkins v. 686 Halsey Food Corp.*, 36 A.D.3d 881,

881, 829 N.Y.S.2d 185, 186 (2d Dep't 2007) (citing Business Corporation Law § 306[b][1]; *Flick v. Stewart-Warner Corp.*, 76 N.Y.2d 50 [1990]).

Plaintiff's proof of service on Defendant Reliance states that the process server effected service on "Reliance Distribution Inc. c/o Mohammed Awais on Amy Lesch, who is designated by law to accept service of process on behalf of New York State, Secretary of State on 4/15/2020." *See* Dkt. No. 11. Defendant Reliance does not offer any proof that Plaintiff did not, in fact, serve the Secretary of State on its behalf pursuant to New York Business Corporation Law § 306. Therefore, the Court denies Defendants' motion to the extent that they argue that Plaintiff did not properly effect service on Defendant Reliance.

**B.** **Service on Defendant CellnTell**

There is no dispute that "[a] foreign entity may be served with process pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention")." *AngioDynamics*, 2019 WL 10787926, at *11 (citing Fed. R. Civ. P. 4(f)(1), 4(h)(2), 4(l)(2)(A)). There is also no dispute that "Canada is a signatory to the Hague Convention." *Id.* (citing *Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 58 (D. Mass. 2002) ("Canada . . . entered into the Hague Convention in April 1989")). "'[T]o make effective service in a country that has joined the Hague Convention, a plaintiff must follow the provisions of the treaty,' and '[t]he country in which service is being made is the country whose laws must be obeyed.'" *Id.* (quoting [*Marcantonio*, 206 F. Supp. 2d at 58]). "The Hague Convention 'requires each member country to designate a Central Authority to receive documents from another member country' . . . [and, i]n addition, . . . permits service by other means so long as the destination country does not object. . . ." *Id.* (quoting *Brockmeyer v.*

*May*, 383 F.3d 798, 801 (9th Cir. 2004)) (citing Hague Convention, arts. 10, 11, 19; *Dimensional Comm'cns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 655 (D.N.J. 2002) ("[T]he Hague Convention permits alternate channels of service so long as they are not objected to by the receiving State.")). "To determine whether the destination country objects to a particular form of service, courts have looked to the service laws of that country to determine whether the employed method of service would be valid therein.'" *Id.* (quoting *Jerge v. Potter*, No. 99-CV-0312E(F), 2000 WL 1160459, at *1 (W.D.N.Y. Aug. 11, 2000)).

In this case, because Defendant CellnTell is located in the Province of Ontario, Canada, the laws of that Province control the question of whether Canada would object to the method of service. "Ontario has rules of civil procedure governing service on a corporation." *Id.* (citing Ontario Rules of Civil Procedure 16.01(1), 16.02(1)(c), *available at*

https://www.ontario.ca/laws/regulations/900194). "Under those rules, a corporation must be personally served with 'originating process' 'by leaving a copy of the document with an officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business.'" *Id.* (quoting [Ontario Rules of Civil Procedure] at R. 16.01(1), 16.02(1)(c)); *see also Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 656 (D.N.J. 2002). Finally, "[i]n the absence of effective service of summons, a federal court may not exercise personal jurisdiction over a defendant." *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 Civ. 9258 (ALC) (MHD), 2014 WL 1331046, *6 (S.D.N.Y. Mar. 31, 2014) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987)).

The Proof of Service that Plaintiff filed with regard to its service on Defendant CellnTell states as follows: "I personally served the summons on the individual at 401 Traders Blvd E #1,

Mississauga, ON L4Z 2HB on April 17, 2020." *See* Dkt. No. 10. Although the Proof of Service does not provide the name of the "individual" who was personally served, Plaintiff also submitted the affidavit of its Process Server, Mohammed Ahmed, in which he states that the "facts contained [therein] are true and accurate to the best of [his] knowledge and recollection" and are based on his "own personal knowledge." *See* Dkt. No. 29-1. He further states that, "[a]t approximately, 2 p.m. on Friday, April 17, 2020," he arrived at CellnTell's office, "knocked on the door to Cellntell office (which was clearly marked as Cellntell) and spoke with an individual named Preet Sarkaria." *See id.* at ¶¶ 5-6. He also states that "Ms. Sarkaria appeared to be in her place of employment and based upon my experience as a process server appeared to be in control or management of the place of business at the time of service." *See id.* at ¶ 7. Mr. Ahmed then states that he "handed Ms. Sarkaria an envelope containing the above referenced summons and complaint from this matter. She opened up the envelope containing the summons and complaint in front of me as soon as she received it from me." *See id.* at ¶ 8. Based on his experience as a process server, Mr. Ahmed states that it is his "opinion that she noticed that it was a court document." *See id.* at ¶ 9. Furthermore, he states that, based on his "experience as a process server, this is proper service of Cellntell under Canadian law." *See id.* at ¶ 11.

In response, Defendants submitted the Affidavit of Sajid Butt, in which he states that he "makes this Affidavit upon [his] personal knowledge and . . . that the facts set forth herein, and in the Complaint in this matter, are true and correct." *See* Dkt. No. 30-1 at ¶ 1.[1] He also states

---

[1] Although Mr. Butt states that he makes the statements in this affidavit based on "personal knowledge," in his original affidavit in support of Defendants' motion, he stated that, although he "confirmed with CellnTell's employees who were present on April 17, 2020 that the front door was locked and was not opened to the public for any purpose whatsoever on April 17, 2020[;] . . . [he] was also personally away from the business until approximately June 2020 due to the illness of [his] father, who passed away in December 2020." *See* Dkt. No. 24-2 at ¶¶ 12, 14 (It is fair to assume that Mr. Butt's father passed away in December 2019, not December 2020). Mr.

that he is "an authorized representative of [Defendant CellnTell]," *see id.* at ¶ 2, and that

"CellnTell was not served with process in this action on April 17, 2020 or otherwise," *see id.* at

¶ 5. He explains that "[t]he Province of Ontario enacted strict lockdown procedures due to the

COVID-19 Pandemic around March 2020 [and that a] mandatory 10-day lockdown of businesses

ended in early April." *See id.* at ¶¶ 7-8. He also notes that, "[a]s a precaution, like most

businesses in Canada, CellnTell closed its doors and limited its operations during March and

April." *See id.* at ¶ 9. Furthermore, he attests that, "[o]n or about April 17, 2020, only three or

four employees were permitted and/or present in CellnTell's offices [and that] CellnTell's

employee, Ms. Preetpal Kaur, was present on April 17, 2020." *See id.* at ¶¶ 10-11. He further

states that "Ms. Kaur's job description does <u>not</u> include opening mail addressed to CellnTell

[and] did not report having opened CellnTell's doors to outsiders on April 17, 2020 and denies

having received any envelope from a process server on April 17, 2020." *See id.* at ¶¶ 12-13. Mr.

Butt also states that "Ms. Kaur does not go by the name 'Preet Sarkaria' and CellnTell does not

identify her by that name." *See id.* at ¶ 14. Furthermore, he avers that "[n]o CellnTell employee

ever interacted with a process server on April 17, 2020 as CellnTell employees were under strict

instructions to keep the front door locked and closed to the public due to government

regulations." *See id.* at ¶ 15. Finally, he states that "[o]nly CellnTell's shareholders are

---

Butt also states that he "confirmed that no CellnTell shareholder ever received or accepted service of process on April 17, 2020." *See id.* at ¶ 15. Although Mr. Butt may have "confirmed" that no one associated with Defendant CellnTell accepted service of the summons and complaint on April 17, 2020, he does not have "personal knowledge" of that fact because he was not present.

    Furthermore, although Mr. Butt states that "the facts set forth . . . in the Complaint in this matter" are true and correct, this is an obvious error because he is a representative of Defendant CellnTell, not Plaintiff, and as such would not attest to the truthfulness of the facts set forth in the complaint unless he were admitting to those facts, which is not likely.

authorized to accept legal process [and] Ms. Kaur was not in control or management of the office where service purportedly occurred, and Ms. Kaur would not be authorized to accept service of process on behalf of CellnTell." *See id.* at ¶¶ 16-17.

Defendant CellnTell also submitted the affidavit of Preetpal Kaur, who states that she makes "this Affidavit upon [her] personal knowledge and state[s] that the facts set forth therein, and in the Complaint in this matter, are true and correct." *See* Dkt. No. 30-2 at ¶ 1.[2] Ms. Kaur further asserts that her "name is Preetpal Kaur. The name on [her] identification card is Preetpal Kaur [and she is an] employee of CellnTell and was an employee of CellnTell on April 17, 2020." *See id.* at ¶¶ 4-5. Although she acknowledges that she "was present at CellnTell's offices on April 17, 2020[, she states that she] did not open the door to a process server, . . . [and] did not accept an envelope from a process server on April 17, 2020." *See id.* at ¶¶ 6-8. Ms. Kaur further states that she identifies herself "as Preetpal Kaur for official purpose [sic] . . . [and i]n April 2020, [she] understood and abided by [her] employer's instruction that CellnTell was to remained [sic] closed to the public due to the COVID-19 pandemic" *See id.* at ¶¶ 9-10. She also avers that her "job duties do not include opening CellnTell's mail [and she] would not have opened an envelope addressed to CellnTell if it was hand delivered to [her]." *See id.* at ¶ 11. Furthermore, she asserts that, "[a]s an employee of CellnTell, [she] was not in control or management of the office location where service purportedly occurred, and [she] would not be authorized to accept service of process on behalf of CellnTell." *See id.* at ¶ 13. Finally, she states that she has "reviewed the affidavit provided by Plaintiff's process server, Mohammed Ahmed and [she] dispute[s] his statements as they may pertain to [her] . . . [and] reiterate[s] that

---

[2] As noted with regard to Mr. Butt, Ms. Kaur cannot attest to the truth and correctness of the facts set forth in Plaintiff's complaint.

[she] did not meet process server Mohammed Ahmed, and . . . did not accept an envelope from him on April 17, 2020 or any other time." *See id.* at ¶¶ 14-15.

Although Plaintiff's Proof of Service does not identify the person whom Mr. Ahmed allegedly served with process at Defendant CellnTell's office, Mr. Ahmed's affidavit does identify that person and indicates that, based on his experience, she was a person who appeared to be in control or management of the business. "The Second Circuit has explained that affidavits of service establish a prima facie case that service was effected or attempted in the manner described therein, . . . [h]owever, the Second Circuit has also held that '[a] defendant's sworn denial of receipt of service . . . rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing. . . .'" *The Haskell Co. v. Radiant Energy Corp.*, No. 05-CV-04403 (DLI) (MDG), 2007 WL 2746903, *7 (E.D.N.Y. Sept. 19, 2007) (quoting *Old Republic Ins. Co.*, 301 F.3d at 57) (citing *Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983) (holding that the district court abused its discretion by failing to hold an evidentiary hearing to resolve the issue of whether service had been effected in light of the directly conflicting affidavits submitted by the process server and by the defendants)).

Based on the dueling affidavits of Plaintiff's process server, Mr. Ahmed, and Defendant CellnTell's representatives, in particular Ms. Kaur, the Court will schedule an evidentiary hearing to determine whether or not Plaintiff properly effected service on Defendant CellnTell.

## C.    Defendant Reliance's motion to vacate the default judgment entered against it

Pursuant to Rule 55(c), "[t]he court may set aside . . . a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that, "[o]n motion and just terms, the court may relieve a party . . . from a final

judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). Finally, a defendant must make "[a] motion under Rule 60(b) . . . within a reasonable time -- and for reasons (1), (2) and (3) no more than a year after the entry of the judgment . . . ." Fed. R. Civ. P. 60(c)(1).

"Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citations omitted). In other words, although "it should be broadly construed to do 'substantial justice,' . . . final judgments should not 'be lightly reopened.' . . ." *Id.* (internal quotations omitted). Furthermore, because Rule "60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances . . . [and a] motion seeking such relief is addressed to the sound discretion of the district court . . . ." *Id.* (internal citations omitted). For purposes of Rule 60(b)(1) relief, "[m]ere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." *Id.* at 62 (citations omitted). "More particularly . . . an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment." *Id.* (citations omitted). Finally, Rule 60(b)(6) "is properly invoked only when there are extraordinary circumstances justifying relief, . . ., when the judgment may work an extreme and undue hardship, . . . and when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule. . . ." *Id.* at 63 (internal citations omitted).

"'[The Second Circuit] ha[s] made known [its] preference for resolving disputes on the merits.'" *Sream Inc. v. Saakshi Enters. Inc.*, No. 16-cv-1408 (NG) (RML), 2017 WL 2633510, *1 (E.D.N.Y. June 15, 2017) (quoting *Palmieri v. Town of Babylon*, 277 Fed. Appx. 72, 74

(2008) (internal quotation omitted)). Moreover, "when considering a motion to vacate a default judgment, a court often considers (1) whether the default was wilful [sic]; (2) whether the defendant has a meritorious defense; and (3) whether the non-defaulting party has been prejudiced. Any doubts as to whether a default should be set aside should be resolved in favor of the defaulting party." *Howard Johnson Int'l, Inc. v. Wang*, 7 F. Supp. 2d 336, 339 (S.D.N.Y. 1998) (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) ("[U]nder the caselaw all doubts must be resolved in favor of trial on the merits."); *Kumar v. Ford*, 111 F.R.D. 34, 38 (S.D.N.Y. 1986) (same)).

Defendants submitted the declaration of M. Salman Ravala, a partner at Criscione Ravala, LLP, the firm that represents them, in which Mr. Ravala states that he "represented Defendant CellnTell in a different matter and during [his] Firm's work and on November 8, 2020, [he] inadvertently stumbled upon this action." *See* Dkt. No. 24-4, Declaration of M. Salman Ravala, Esq., at ¶ 4. He also asserts that he "was surprised that CellnTell [had] not inform[ed] [his firm] of this proceeding, so [he] immediately emailed one of CellnTell's contacts to ask if he was aware of the lawsuit." *See id.* at ¶ 5. He further states that "Defendants were both unaware of this lawsuit . . . retained [his] services and [he] quickly contacted Plaintiff's counsel in November 2020." *See id.* at ¶¶ 6-7. Mr. Ravala contends that "Plaintiff's counsel led [him] to believe that the parties would enter into a global settlement, such that Defendants could weigh their options and resolve the case expeditiously." *See id.* at ¶ 8. He also asserts that "the parties' counsel . . . spoke on the telephone several times, as well as exchanged several emails in furtherance of their settlement discussions." *See id.* at ¶¶ 9-10. Mr. Ravala further avers that, "[d]isturbingly, at no point did Plaintiff's counsel . . . inform [him] that he had filed a Motion for Turnover Proceedings, had scheduled a hearing on the said Motion for Turnover Proceedings, or

had served third-parties with an information subpoena. Neither [he] nor [his] clients were served with Motion papers or notices of any hearings." *See id.* at ¶ 11. Finally, Mr. Ravala states that "it is submitted under information and belief that good cause exists to set aside the Entry of Default Judgment, as there was no willfulness on the part of Reliance, meritorious defenses exist, and there is no level of prejudice that the Plaintiff may suffer should the court grant the requested relief and allow the case to be decided on the merits. . . . Reliance has explained to [him] that it does not and has not sold [Plaintiff's] products on Amazon.com. Reliance is not an online seller." *See id.* at ¶¶ 14-15.

In response, Plaintiff's counsel, Morgan T. Nickerson, states in his affidavit that, "[u]pon learning of Defendants' infringing and improper conduct, [Plaintiff] contacted Defendants directly via letter as early as February 20, 2020, and again on March 4, 2020, requesting that Defendants cease the sale of [Plaintiff's] products on Amazon.com." *See* Dkt. No. 29-2 at ¶ 3 & Exhibit A attached thereto. Furthermore, he states that, "before filing this lawsuit, [he] caused to be contacted Defendants CellnTell Distribution Inc. ("Cellntell") and Reliance Distribution Inc. ("Reliance," and together with Cellntell, "Defendants") via email and letter on March 26, 2020 notifying them of [Plaintiff's] infringement allegations that are the basis of this lawsuit." *See id.* at ¶ 4. He further states that he "caused [Plaintiff's] March 26, 2020 pre-litigation demand letter to be sent via FedEx to Cellntell's Ontario address (401 Traders Boulevard E, Unit #1, Mississauga, Ontario, L4Z 2H8) as well as email addresses associated with Defendants, finance@cellntell.com and infor@cellntell.com. [He] caused [Plaintiff's] March 26, 2020 pre-litigation demand letter to be sent via FedEx to Reliance's address listed on the New York Secretary of State website: Mohammad Awais, 99 Washington Avenue, Suite 1008, Albany NY 12260. *See id.* at ¶ 5 & Exhibit B attached thereto. He "received confirmation from FedEx that

both demand letters were delivered and signed for on March 27, 2020." *See id.* at ¶ 6 & Exhibit C attached thereto.

Plaintiff's counsel also states that, "[t]hrough its investigations to date, [Plaintiff] is in possession of Cellntell invoices, as well as Reliance invoices, totaling more than $100,000.00 of [Plaintiff's] products *per Defendant*." *See id.* at ¶ 7 & Exhibit D attached thereto. Plaintiff's counsel avers that, after receiving no response from Defendants to the pre-litigation demand letters, Plaintiff filed its complaint on April 10, 2020. *See id.* at ¶ 8.

Moreover, Plaintiff's counsel asserts that, "[a]fter the Court granted [Plaintiff's] Motion for Default Judgment, counsel for Defendants contacted [him] to engage in settlement discussions." *See id.* at ¶ 13. He states that, "[d]uring these discussions, it was apparent that Defendants' counsel was aware of the case docket in this action, including the default judgment entered against Defendants." *See id.* at ¶ 14. Furthermore, he avers that, "during these discussions, [he] informed opposing counsel, and it was apparent that Defendants' counsel was aware of, [Plaintiff's] intention to enforce the judgments against Defendants via Turnover Order. At no time did [he] inform or imply to Defendants' counsel that [Plaintiff] would not be seeking to collect on its judgment." *See id.* at ¶ 15.

Plaintiff's counsel further states that, "[b]y means of subpoena, [Plaintiff] learned that Defendant Cellntell had $256,330.32 in its Amazon.com account and Defendant Reliance had $118,943.78 in its Amazon.com account. Accordingly, on November 23, 2020, [Plaintiff] moved to enforce the judgment against Defendants." *See id.* at ¶ 16. Further, on November 24, 2020, Plaintiff's counsel "caused to be served the Motion Scheduling Notice as to [Plaintiff's] Motion to Enforce Judgment upon Cellntell via FedEx at its Mississauga, Ontario address and received confirmation of receipt[.]" *See id.* at ¶ 17 & Exhibit G attached thereto. On the same

date, Plaintiff's counsel "caused to be served the Motion Scheduling Notice as to [Plaintiff's] Motion to Enforce Judgment upon Reliance via certified mail at its registered address listed on the New York Secretary of State website: Mohammad Awais, 99 Washington Avenue, Suite 1008, Albany, NY 12260. The service package delivered to Reliance's registered address was returned as 'Attempted Not Known.'" *See id.* at ¶ 18 & Exhibit H attached thereto.

Plaintiff's counsel also states that he "made Defendants' counsel aware of the filing and that there was unlikely to be a hearing as the hearing date was scheduled for December 25, 2020 -- Christmas Day. Moreover, it was, in [his] experience, the Court's preference to decide matters on the papers rather than hold a hearing." *See id.* at ¶ 19. He notes that he "did not send Defendants' counsel a courtesy copy of the filing as [counsel] made clear that he had access to the online docket and that he did not intend to appear in the case. Indeed, he still does not have an appearance in this matter. Accordingly, the statute required the filing to be sent directly to the parties." *See id.* at ¶ 20. Plaintiff's counsel notes that, "on February 8, 2021, the Court granted [Plaintiff's] Motion to Enforce Judgment, ordering Amazon.com to pay [Plaintiff] the funds in its possession to satisfy the judgment against Defendants." *See id.* at ¶ 21. Finally, Plaintiff's counsel asserts that, "[o]nly once Defendants' funds held by Amazon.com were collected by [Plaintiff] did Defendants appear in this action by filing its Motion to Vacate the Order on Motion for Default Judgment on March 3, 2021." *See id.* at ¶ 22.

With regard to the issue of willfulness, "[t]he Second Circuit has interpreted willfulness in the context of a default to refer to conduct that is 'more than merely negligent or careless.'" *Sream Inc.*, 2017 WL 2633510, at *1 (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)) (other citations omitted). "Rather, the defaulting party must have engaged in deliberate or egregious conduct." *Id.* (citing *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005)). "A default

should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991) (citations omitted).

There is some question as to whether Defendant Reliance had notice of this action prior to November 8, 2020, when its counsel "inadvertently" stumbled upon this case. Although Plaintiff properly effected service on Defendant Reliance by serving the New York Secretary of State, there is nothing in the record to demonstrate that the Secretary of State, in turn, sent a certified copy of the summons and complaint to Defendant Reliance at the address that it had on file. The Secretary of State's Office was obviously open because Plaintiff's process server delivered the copies of the summons and complaint to Amy Lesch at that office. However, how soon thereafter the Secretary of State was able to mail a copy of the summons and complaint to Defendant Reliance at the address that the Secretary of State had on file given the COVID-19 pandemic is unknown. Mr. Awais states in his affidavit that he has "no knowledge of the Summons and Complaint being placed in Reliance's mailbox[;] . . . [has] no knowledge of anyone accepting the Summons and Complaint which should have been sent via certified mail[;] and [has] checked Reliance's mailbox various times, and Reliance has not received the Summons and Complaint." *See* Dkt. No. 24-3 at ¶¶ 9-11. Mr. Awais also avers that Defendant Reliance "did not receive a copy of Plaintiff's Motion for Default Judgment, . . . Motion for Turnover Proceedings and any Notice of Hearings related to the Turnover Order, or for that matter any third-party subpoenas in this action, as would be required under due process of law." *See id.* at ¶¶ 13-14.

Giving Defendant Reliance the benefit of the doubt, the Court finds that, at least until on or about November 8, 2020, Defendant Reliance's default was not willful. It is a closer call with regard to Defendant Reliance's failure to appear in this action once its counsel notified it of the

entry of default judgment. The fact that Defendant Reliance's counsel was engaged in settlement negotiations with Plaintiff's counsel to resolve the matter does not explain why Defendant Reliance's counsel did not, at the very least, file a Notice of Appearance in this action. Moreover, there was nothing to prevent Defendant Reliance's counsel from filing a motion to vacate the default judgment at that time; and there is nothing to explain why counsel waited four months before filing such a motion, other than his engagement in settlement negotiations with Plaintiff's counsel. Nonetheless, because Defendant Reliance's counsel's conduct does not rise to the egregious level, the Court finds that Defendant Reliance's default was not willful.

With regard to whether Defendant Reliance has raised a meritorious defense, "[w]hether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). "This standard applies regardless of whether there has been an evidentiary hearing or an opportunity for discovery." *Id.* "Judging the merit of a defense for the purposes of a motion to vacate a default judgment pursuant to a more rigorous standard would be inappropriate [because] [d]efault judgments 'are generally disfavored and are reserved for rare occasions.'" *Id.* at 167-68 (quoting [*Enron Oil Corp.*, 10 F.3d] at 96). Therefore, "the criteria for vacating a default judgment pursuant to Rule 60, including the meritorious defense factor, 'should be construed generously.'" *Id.* at 168 (quoting [*Enron Oil Corp.*, 10 F.3d at 96]).

"'In order to make a sufficient showing of a meritorious defense in connection with a motion to set aside a default, the defendant need not establish his defense conclusively, but he must present credible evidence of facts that would constitute a complete defense.'" *Sream Inc.,*

2017 WL 2633510, at *3 (quoting *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 Fed. Appx. 453, 456 (2d Cir. 2011)).

In his affidavit, Mohammad Awais states that he is "an authorized representative of" Defendant Reliance, *see* Dkt. No. 24-3 at ¶ 2, and that "Reliance is innocent of the allegations in the Complaint because Reliance is not an online retailer and does not sell goods online" and "does not sell [Plaintiff's] products on Amazon.com." *See id.* at ¶¶ 19-20. Furthermore, Mr. Awais avers that "Reliance has not done any of the acts alleged in Plaintiff's Complaint because Reliance has no dealings with [Plaintiff's] products whatsoever . . . [and that, although] Plaintiff's Complaint lumps the Defendants together as if they are one and the same, . . . Reliance is not an online seller and has not sold any goods that Plaintiff alleges are offending." *See id.* at ¶¶ 21-22.[3]

Although Plaintiff has submitted evidence that appears to contradict Mr. Awais' statements, for purposes of this motion, the Court's task is not to resolve factual disputes. If Defendant Reliance is able to prove at trial that it is not an online retailer and does not sell Plaintiff's products on Amazon.com or elsewhere, this would constitute a complete defense to Plaintiff's allegations that Defendant Reliance violated the Lanham Act by selling Plaintiff's products. Therefore, the Court finds that Defendant Reliance has presented a meritorious defense to Plaintiff's claims.

Finally, in assessing the issue of prejudice, "the Court must address 'whether and to what extent[] vacating the default judgment will prejudice the non-defaulting party.'" *Gesualdi v.*

---

[3] The Court notes that, although Mr. Awais appears to take issue with Plaintiff "lump[ing] the Defendants together as if they were one and the same," in his affidavit in reply to Plaintiff's opposition to Defendants' motion to vacate the default judgment, he states that he is "an authorized representative of **both** CellnTell and Reliance Distribution, Inc." *See* Dkt. No. 30-4 at ¶ 2 (emphasis added).

*Quadrozzi Equip. Leasing Corp.*, No. 11 CV 115 (RJD) (VMS), 2016 WL 7322333, *4

(E.D.N.Y. Dec. 15, 2016) (quoting *Green*, 420 F.3d at 110). "More than mere delay is required

in order to find that the non-defaulting party will [be] prejudiced, but to the degree that delay

"'thwart[s] plaintiff's recovery or remedy,'" the Court may find sufficient prejudice." *Id.* (quoting

[*Green*, 420 F.3d at 110] (quoting 10A Charles A. Wright, et al., Fed. Prac. & Proc.: Civ.,

§ 2699, at 169 (3d ed. 1998))); *see also Sream Inc.*, 2017 WL 2633510, at *4 (stating that

"[d]elay alone does not establish prejudice. Rather, a plaintiff must demonstrate that delay will

result in the loss of evidence, increase discovery difficulties, or provide greater opportunity for

fraud and collusion." (citing *Robinson v. Sanctuary Music*, 383 Fed. Appx. 54, 59 (2d Cir. 2010);

*Cordero v. AT&T,* 2017 WL 52591, at *5 (E.D.N.Y. Jan. 4, 2017)). In *Gesualdi*, the court found

that the plaintiffs would be prejudiced in two ways if the court were to grant the defendants'

motion to vacate the default judgment: (1) the plaintiffs would be at risk of losing lien priority

against the defendants' various creditors and (2) given the passage of time and apparent

dissolution of at least one of the defendants, "'[P]laintiffs reasonably express concern that the

individual and corporate defendants may be judgment-proof by the conclusion of this litigation.'"

*See Gesualdi*, 2016 WL 7322333, at *5 (quoting *Lopez v. Traffic Bar & Rest., Inc.*, 12 Civ. 8111

(JCF), 2015 WL 545190, at *5 (S.D.N.Y. Feb. 9, 2015)).

Plaintiff argues that it would be prejudiced if the Court vacated the default judgment

against Defendant Reliance because "vacating the default judgment would diminish, if not

extinguish, [Plaintiff's] ability to recover and collect upon a potential judgment should litigation

proceed, as [Defendant Reliance] would be permitted to remove any funds from [its]

Amazon.com account, or elsewhere, which would be (and have been) collected to satisfy the

judgment in this case." *See* Dkt. No. 29 at 25.

Under Rule 60(b) of the Federal Rules of Civil Procedure, the court may relieve a party from a default "[o]n motion and just terms." Fed. R. Civ. P. 60(b). Therefore, "a district court may impose certain conditions on the parties in conjunction with the granting of a Rule 60(b) motion 'to remedy any prejudice that the non-defaulting party suffered as a result of the default and the granting of the motion.'" *Richardson v. Nassau Cnty.*, 184 F.R.D. 497, 503 (E.D.N.Y. 1999) (quoting *Henderson v. Wishinski*, No. 95 Civ. 5059, 1997 WL 83413, *3 (S.D.N.Y. Feb. 27, 1997) (citing *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 386 (S.D.N.Y. 1986); *Oliner v. McBride's Industries Inc.*, 102 F.R.D. 561, 563 (S.D.N.Y. 1984) [in Rule 55(c) motion, defaulting party must reimburse opponent for costs of finding defendant and serving notice of default])). Moreover, "[c]ourts consistently read this provision as permitting the award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment." *Id.* (citations omitted).

Given the Second Circuit's preference for deciding cases on the merits, the relatively large sum of money involved -- $100,000 -- and the fact that Defendant Reliance has posited a meritorious defense to Plaintiff's claims, the Court grants Defendant Reliance's motion to vacate the default judgment entered against it conditioned on Defendant Reliance's payment of the reasonable attorney fees that Plaintiff incurred in bringing the default motion.


## IV. CONCLUSION

Having reviewed the entire file in this case, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Plaintiff and Defendant CellnTell shall appear for an evidentiary hearing on **September 8, 2021, at 1:00 p.m., in Syracuse, New York** to resolve the factual disputes that

exist regarding the issue of whether Plaintiff effected service of the summons and complaint on Defendant CellnTell;[4] and the Court further

ORDERS that Plaintiff and Defendant CellnTell shall file their lists of witnesses, with a brief summary of the expected testimony of each witness whom they expect to call at the evidentiary hearing, and their lists of exhibits they expect to introduce into evidence at the evidentiary hearing **fourteen (14) days prior to the date set for the evidentiary hearing**; and the Court further

ORDERS that Defendant Reliance's motion to vacate the default judgment against it, *see* Dkt. No. 24, is **GRANTED** conditioned on Defendant Reliance's payment of the reasonable attorney fees that Plaintiff incurred in bringing of the default motion.  In this regard, Plaintiff's counsel is instructed to file and serve an affidavit with supporting documentation showing the hours expended and tasks performed related to the bringing the default motion on or before **July 14, 2021**, to which Defendant Reliance may respond on or before **July 28, 2021**; and the Court further

ORDERS that, once the Court enters an Order regarding the amount of attorney's fees Defendant Reliance is required to pay to Plaintiff **and** Defendant Reliance files an affidavit attesting that it has complied with said Order, the Court will vacate the default judgment entered against Defendant Reliance and, within **fourteen (14) days of that vacation**, Defendant Reliance shall file its response to Plaintiff's complaint; and the Court further

---

[4] The Court is aware that some of the parties' witnesses may be in Canada and unable to testify at the evidentiary hearing until the border between Canada and the United States is reopened.  If the border is not open by the date set for the evidentiary hearing, the Court will adjust the hearing date accordingly.

**ORDERS** that Plaintiff shall hold in escrow any funds that it has collected from the Amazon.com accounts and any other sources of both Defendants until this litigation is concluded.

**IT IS SO ORDERED.**

Dated: June 30, 2021
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge